U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAY 1 8 2011

CHRIS R. JOHNSON, CLERK

BY _____

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

GREG KNOWLES, Individually and as Class
Representative on Behalf of all Similarly
Situated Persons Within the State of Arkansas                    PLAINTIFF

v.                                                  No. _____11-4044_____

THE STANDARD FIRE INSURANCE
COMPANY                                                          DEFENDANT

## NOTICE OF REMOVAL

Defendant The Standard Fire Insurance Company ("Standard Fire"), pursuant to 28

U.S.C. §§ 1441 and 1446, hereby removes to this Court the action captioned, *Greg Knowles v.*

*The Standard Fire Insurance Company*, Case No. CV-2011-0239-3 on the docket of the Circuit

Court of Miller County, Arkansas.

In support of its Notice of Removal, Standard Fire respectfully alleges:

1.      On April 13, 2011, Plaintiff Greg Knowles commenced the captioned action by

filing a complaint in the Circuit Court of Miller County, Arkansas. A copy of all process,

pleadings, and orders served upon Standard Fire in the state court action is attached as Exhibit A

hereto.

2.      The Summons and the Complaint were served by certified mail on the

Corporation Service Company as agent for service of process for Standard Fire on April 18,

2011. This Notice of Removal is filed within 30 days of service of process and is therefore

timely under 28 U.S.C. § 1446(b).

3.      This Court has jurisdiction under the Class Action Fairness Act of 2005

("CAFA"), 28 U.S.C. § 1332(d), because this lawsuit is a putative class action in which there is

minimal diversity of citizenship and the amount in controversy exceeds $5 million, as explained more fully below.

## PARTIES

4.     Plaintiff Greg Knowles is an individual domiciled in Miller County, Arkansas. (Complaint, ¶ 5.)

5.     Defendant Standard Fire is a corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  (*Id.*, ¶ 7.)

## PLAINTIFF'S ALLEGATIONS[1]

6.      Plaintiff filed this case as a putative class action under Arkansas Rule of Civil Procedure 23. (Complaint, ¶ 8.)  Plaintiff alleges that Standard Fire insured his property and that he made a claim with Standard Fire for property damage occurring on or about March 10, 2010. (*Id.*, ¶¶ 15-17.)  Plaintiff alleges that Standard Fire improperly failed to include fees for a general contractor's services, known as general contractor overhead and profit ("GCOP"), in payments made to Plaintiff. (*Id.*, ¶¶ 20-23.)  Plaintiff further alleges that Standard Fire "actively concealed information about entitlement to GCOP."   (*Id.*, ¶ 33.)   Plaintiff claims that "[t]hese underpayments . . . have generated extensive profits for Defendant [and] Defendant's failure to compensate their [sic] insureds for benefits to which they are entitled constitutes breach of contract."  (*Id.*, ¶ 1.)

7.      Plaintiff purports to bring this lawsuit on behalf of a putative class proposed to be defined as "[a]ny and all customers of The Standard Fire Insurance Company who are residents

---

[1] Standard Fire does not admit the underlying facts as alleged by Plaintiff or as summarized herein.  Standard Fire expressly denies any liability to Plaintiff or the putative class.  Similarly, Standard Fire reserves its rights to challenge the legal sufficiency of the allegations in the Complaint.

of Arkansas, who received payments under a homeowners insurance policy issued by The Standard Fire Insurance Company for physical loss or damage to their dwelling, such dwelling located in Arkansas, at any time between January 1, 2009 and December 31, 2010."[2] (*Id.*, ¶ 25.)

8. The Complaint pleads a single cause of action for breach of contract. (*Id.*, ¶¶ 39-45.) The sole alleged breach of contract is that "Defendant materially breached the terms of their [sic] standardized policy contracts with Plaintiff and the Class by failing to include payments for GCOP." (*Id.*, ¶ 44.)

9. The Complaint also contains a series of allegations of "Fraudulent Concealment." (*See id.*, ¶¶ 33-37.) These allegations assert that Standard Fire failed to disclose to Plaintiff and the putative class information regarding entitlement to GCOP and that "Defendant's fraudulent concealment tolls the running of any applicable statute of limitations." (*Id.*, ¶ 37.) The Complaint further alleges that "Plaintiff is not asserting a cause of action or seeking damages for fraud, but is pleading fraudulent concealment for the sole purpose of tolling the statute of limitations." (*Id.*)

---

[2] The proposed class definition further provides that "Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders and agents of Defendant; (2) Persons or entities who timely opt-out of this proceeding using the correct protocol for 'opting-out' that will be formally established by this Court; (3) any and all Federal, State and/or Local Governments, including, but not limited to, their Departments, Agencies, Divisions, Bureaus, Boards, Sections, Groups, Councils and/or any other subdivision, and any claim that such governmental entities may have directly or indirectly; (4) Any currently-sitting Arkansas State Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; (5) Any claim which resulted in the payment of policy limits or more by Defendant; and (6) Plaintiff s Counsel." (Complaint, ¶ 25.) In analyzing the claims of putative class members for purposes of this Notice of Removal, Standard Fire has used reasonable measures to attempt to identify any claims attributable to any persons or entities excluded by Plaintiff from the proposed class, including attempting to identify and remove from the analysis any claims of persons described in categories (1), (4), (5) and (6) above (except for non-spouses falling within the third degree of consanguinity to currently sitting Arkansas state court judges or justices, whose identity is not known to Standard Fire). With respect to category (3), insofar as Standard Fire is aware none of these claims are attributable to governmental entities.

10.    The Complaint seeks, on behalf of Plaintiff and the putative class, damages for breach of contract, attorneys' fees, interest and costs.  (*Id.* at 10.)

## JURISDICTION UNDER CAFA

11.    Congress intended CAFA "to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits." *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009).  Removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), where, as here, a putative class action involves minimal diversity of citizenship and an aggregate amount in controversy exceeding $5 million.

12.    CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action."  28 U.S.C. § 1332(d)(8).  This case is a putative "class action" under CAFA because it was brought under a state statute or rule, namely Ark. R. Civ. P. 23, authorizing an action to be brought by one or more representative persons as a class action.  *See* 28 U.S.C. § 1332(d)(1)(B); Complaint, ¶¶ 8, 31.

### Minimal Diversity

13.    This case satisfies the minimal diversity requirement of CAFA because at least one member of the putative class is a citizen of a state different from at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A).  The named Plaintiff is a citizen of Arkansas.  (Complaint, ¶ 6.) Standard Fire is not a citizen of Arkansas.  (*Id.*, ¶ 7.)

### Amount in Controversy

14.    As the Eighth Circuit has explained, "a party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum." *Bell*, 557 F.3d at 958.  In analyzing the amount in controversy, the question is "not whether the damages *are*

greater than the requisite amount, but whether a fact finder *might* legally conclude that they are
. . . ." *Id.* at 959 (internal quotations and citation omitted; emphasis in original). If the defendant
"prove[s] by a preponderance of the evidence that the amount in controversy is satisfied, remand
is only appropriate if [the plaintiff] can establish that it is legally impossible to recover in excess
of the jurisdictional minimum." *Id.* at 959. Any allegation by the plaintiff claiming a specific
amount is immaterial where there is "no evidence that upon remand [the state] court would
prohibit recovery in excess of the amount alleged as a matter of law." *Id.*

15.     This case satisfies CAFA's amount in controversy requirement because the matter
in controversy exceeds the sum of $5 million, exclusive of interest and costs. 28 U.S.C. §
1332(d)(2). CAFA provides that "the claims of the individual class members shall be aggregated
to determine whether the matter in controversy exceeds the sum or value of $5,000,000,
exclusive of interest and costs." *Id.*, § 1332(d)(6). In determining the amount in controversy,
this Court properly considers all applicable damages, including statutory penalties and attorneys'
fees. *See, e.g.*, *Powell v. State Farm Fire & Cas. Co.*, 2010 U.S. Dist. LEXIS 6796, at *2-3
(W.D. Ark. Jan. 27, 2010) (Barnes, J.) (holding that, in case involving insurance claim for
property damage, amount in controversy included potential statutory penalty under Ark. Code
Ann. § 23-79-208 of 12% of amount sought under insurance policy, plus attorneys' fees).

16.     Plaintiff alleges that Standard Fire breached the insurance contracts "by failing to
include payments for GCOP." (Complaint, ¶ 44.) Plaintiff alleges that "[t]he percentage
assessed for overhead and profit within the construction and insurance industries is 20% of the
estimated job." (*Id.*, ¶ 3.) As an example, Plaintiff explains that "where the repair costs on a job
equal $10,000, the GCOP payment will be an additional $2,000." (*Id.*) A reasonable estimate of
the "repair costs" attributable to the homeowners' insurance claims of Plaintiff and the putative

class members can be made by ascertaining the total amount of loss that was determined to be covered under their policies with respect to structural losses. This amount consists of the sum of the benefits paid on such claims and the deductibles associated with those claims. For example, if the repair costs on a particular claim were determined to be $10,000, and the amount paid was $9,000 after applying a deductible of $1,000, then if GCOP were payable on the claim this would add another $2,000 in benefits (i.e., 20% of the $10,000). Thus, a portion of the amount in controversy can be reasonably estimated to constitute 20% of the aggregate total of prior payments and deductibles.

17.     A review of data maintained regarding payments and deductibles on those claims falling within the definition of the proposed class reflects that the aggregate total of payments for structural losses and deductibles is $15,274,806. Twenty percent of that amount is $3,054,961.

18.     If Plaintiff and the putative class succeed in establishing breaches of contract, they could potentially be entitled to an additional 12% penalty, plus attorneys' fees. Arkansas law provides, as a general rule, that "[i]n all cases in which loss occurs and the . . . property . . . insurance company . . . shall fail to pay the losses within the time specified in the policy after demand is made, the [company] shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." Ark. Code Ann. § 23-79-208(a)(1).[3] This Court considers such damages and attorneys' fees as part of the amount in controversy for purposes of federal jurisdiction. *See Powell*, 2010

_____

[3] There are certain exceptions to this general rule where the amount recovered is more than 20% below the amount demanded (assuming there is a specific amount in demand). *See* Ark. Code Ann. § 23-79-208(d). For purposes of analyzing the amount in controversy, however, it must be presumed that Plaintiff and the putative class can prove the facts alleged and recover on the claims alleged.

U.S. Dist. LEXIS 6796, at *2-3.

19.     Here, an additional 12% statutory penalty added to the estimated amount in controversy set forth in Paragraph 17 constitutes an additional $366,595, for a potential total compensatory damages award of $3,421,556.

20.     With respect to attorneys' fees, in cases brought against insurance companies seeking to recover under insurance policies, attorneys' fees are potentially available under Ark. Code Ann. § 23-79-208(a)(1). Arkansas courts have held that attorneys' fees of "forty percent of the amount recovered by [plaintiff] under the policies, plus penalty and prejudgment interest," are reasonable under that statute. *Capital Life & Accident Ins. Co. v. Phelps*, 76 Ark. App. 428, 434-35, 66 S.W.3d 678, 682-83 (2002). Here, attorneys' fees calculated, as in *Phelps*, as 40% of breach of contract damages plus the penalty and prejudgment interest,[4] would be an additional amount in excess of $1,602,594, for a total amount in controversy exceeding $5,024,150. This calculation is more conservative than the actual attorneys' fees awarded in *Phelps*, which were 58% of the damages for breach of contract (attorneys' fees of $30,589.86 on a breach of contract award of $52,610.07). *See Phelps*, 76 Ark. App. at 434-35, 66 S.W.3d at 682-83. Here, an attorneys' fees award measured as 58% of the potential damages for breach of contract would be $1,771,877, for a total amount in controversy of $5,193,433.

21.     Because this case is a putative class action, the attorneys' fees awarded by the

---

[4] In this calculation of attorneys' fees, prejudgment interest is calculated at the maximum rate of 5% above the federal discount rate (*see* Ark. Const. art. 19, § 13), and assumes that this case could reach a final judgment within two years of the date of filing. This calculation of the approximate amount of interest was done with interest beginning to accrue on the additional amounts allegedly owed on claim payments during a given year only after the end of that year. Interest would actually begin to accrue within 60 days after Standard Fire owed a payment. An interest calculation running from these actual dates would be higher, and the amount of attorneys fees set forth in this Notice (i.e., $1,602,594) would therefore actually be higher if interest were calculated with more precision.

Miller County Circuit Court potentially could exceed the amounts set forth in Paragraph 20. In other class actions involving the exact same issue regarding alleged failure to pay GCOP and involving the very same lawyers who represent Plaintiff here, tens of millions of dollars have been awarded in attorneys' fees by the Miller County Circuit Court. These fees were awarded where the case settled *prior* to trial, and *prior* to class certification. *See*, *e.g.*, *Beazley v. Hartford Insurance Company of the Midwest*, Case No. CV-2005-58-1 (Ark. Cir. Ct., Miller County); *Alexander v. Nationwide Mutual Insurance Company*, Case No. CV-2009-120-3 (Ark. Cir. Ct., Miller County); *Chivers v. State Farm Fire & Casualty Company*, Case No. CV-2010-251-3 (Ark. Cir. Ct., Miller County); *Feely v. Allstate County Mutual Insurance Company*, Case No. CV-2004-294-3A (Ark. Cir. Ct., Miller County); *see also Johnson v. State Auto Mutual Insurance Company*, CV-2010-114-3 (Ark. Cir. Ct., Miller County).

22.     Moreover, based on the allegations of fraudulent concealment (Complaint, ¶¶ 33-37), this Court should conclude that Plaintiff intends to pursue certification of a class of policyholders for a class period longer than the January 1, 2009 to December 31, 2010 period alleged in Paragraph 25 of the Complaint. Plaintiff alleges that he "is pleading fraudulent concealment for the sole purpose of tolling the statute of limitations." (Complaint, ¶ 37.) The statute of limitations for breach of contract in Arkansas is five years.[5] *See* Ark. Code Ann. § 16-56-111; *Shelter Mut. Ins. Co. v. Nash*, 357 Ark. 581, 184 S.W.3d 425 (2004). Thus, when the Complaint is fairly read as a whole, Plaintiff must be seeking to certify a class for a time period *longer* than the five-year statute of limitations for breach of contract. Otherwise, the allegations of fraudulent concealment in Paragraphs 33 through 37 of the Complaint would serve no purpose.

_____

[5] Many of Standard Fire's homeowners' insurance policies issued in Arkansas contain a provision requiring that suit be brought within five years from the date of loss.

23. Using the most conservative assumption that, when the fraudulent concealment allegations are given effect, the class period encompasses, at a minimum, five years and one day measured retrospectively from the filing of the Complaint on April 13, 2011 (i.e., April 12, 2006, through April 13, 2011), the amount in controversy for breach of contract, using the same method of analysis set forth above, is $7,109,753. When an additional penalty of 12% and attorneys' fees of 40% are added to that amount, the total amount in controversy exceeds $11 million.

## Fraudulent Framing of Class Definition

24. Alternatively, the Court should bar Plaintiff from fraudulent framing his class definition so that it encompasses an arbitrary period shorter than the applicable statute of limitations. Federal courts have long recognized the doctrine of fraudulent joinder, under which a plaintiff cannot prevent removal "by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011). "The purpose of this exception is to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court." *Id.* Similarly, under CAFA, this Court should not permit the newly emerging tactic used by plaintiffs' attorneys of selecting an arbitrary class period that is shorter than the applicable statute of limitations for the sole purpose of attempting to avoid federal jurisdiction. This tactic constitutes a fraudulent manipulation of the provisions of CAFA and contravenes the purpose and intent of CAFA. "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008). Indeed, if courts allow this tactic, a plaintiffs' attorney can make any class action non-removable simply by pleading a class period that is short enough that the amount in

controversy for that arbitrarily shortened class period falls below $5 million. Plaintiffs' attorneys then could bring multiple class actions with class periods encompassing short periods of time, but as long as they file the cases separately and the cases are not pending simultaneously (which would allow removal under *Freeman*), a defendant could not remove any of the cases to federal court. Such a rule of law would completely defeat Congress's intent in enacting CAFA. Accordingly, this Court should bar the fraudulent framing of a class definition and prevent Plaintiff from arbitrarily limiting the time period for his proposed class action to a period shorter than the applicable statute of limitations.[6]

25.     Here, based on Plaintiff's fraudulent framing of their class definition to an arbitrary two-year period, where the applicable statute of limitations is five years, this Court should calculate the amount in controversy based on a five-year period. Using a five-year period, the amount in controversy far exceeds $5 million, based on the analysis set forth in Paragraph 23 above.

26.     Moreover, the Court should not allow an arbitrary cutoff of the class period at December 31, 2010, where, if the class period ended when this suit was filed, that would add an additional amount in excess of $163,683 to the amount in controversy with respect to Plaintiffs' two-year period.

## Invalidity of Plaintiff's Purported Stipulation

27.     Plaintiff purports to stipulate that he will not "seek damages for myself or any other individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek damages for the class *as alleged in the complaint to which this stipulation is attached* in

---

[6] If Plaintiff had alleged in good faith a valid basis for his January 1, 2009 to December 31, 2010 class period, such as if he alleged that Standard Fire commenced the allegedly improper practice on January 1, 2009, and ended it on December 31, 2010, that might not be fraudulent framing of a class definition. But Plaintiff makes no such allegation.

excess of $5,000,000 in the aggregate (inclusive of costs and attorneys' fees)." (Complaint, "Sworn and Binding Stipulation," attached as Ex. A thereto (emphasis added); *see also* Complaint, ¶ 11 and "Prayer for Relief.") However, Plaintiff's putative stipulation does not limit Plaintiff's or the putative class's recovery for several reasons. First, Plaintiff's stipulation does not bind either the *class* or *class counsel*. Only Plaintiff himself signed the stipulation, and his replacement as putative class representative would free the class and class counsel to pursue *any* amount of damages. (Complaint Ex. A.) Moreover, under the express terms of the stipulation itself, it applies only "for the class as alleged in the complaint to which this stipulation is attached" and would not apply to an amended complaint that modifies the proposed class definition (and also might not apply if the state court on its own certified a class defined differently from the proposed class). Second, putative class counsel (who has not even yet been appointed as such) did *not* sign the stipulation, and thus the stipulation is not necessarily binding with respect to whether class counsel could obtain attorneys' fees that would bring the amount in controversy above $5 million. Third, Plaintiff *cannot* waive the rights of the putative class members to seek full recovery simply because he would prefer to litigate in state court. *See Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins. Co.*, No. 11-8003, __ F.3d __, 2011 WL 1206184, at *3 (7th Cir. Apr. 1, 2011) ("[Plaintiff] has a fiduciary duty to its fellow class members. A representative can't throw away what could be a major component of the class's recovery. . . . What [Plaintiff] is willing to accept thus does not bind the class and therefore does not ensure that the stakes fall under $5 million."); *Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883, 2008 U.S. Dist. LEXIS 11180, at *6 (W.D. Mo. Feb. 14, 2008) (explaining, in analyzing amount in controversy under CAFA, that "Plaintiff has no right to limit or compromise the recovery of the class without Court approval, particularly before she has even been approved

as a representative for the class"); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002) ("it is improbable that [the named plaintiff] can ethically unilaterally waive the rights of the putative class members to attorney's fees without their authorization").

28.     Further, and contrary to Plaintiff's assertion in Paragraph 11 of the Complaint, Plaintiff's stipulation is *not* necessarily binding even upon Plaintiff himself. Under a new Arkansas statute enacted shortly before Plaintiff filed this lawsuit, Plaintiff may simply file an amended complaint to negate the effect of the stipulation. Ark. Code. Ann § 16-63-221(b) provides that "[a] declaration . . . is binding on the plaintiff with respect to the amount in controversy *unless the plaintiff subsequently amends the complaint* to pray for damages in an amount that exceeds the jurisdictional limits of the court, at which time the amendment is governed by the Arkansas Rules of Civil Procedure." Ark. Code § 16-63-221(b) (cited in the Complaint at ¶ 11) (emphasis added). It appears that Plaintiff intends to take advantage of this new loophole in Arkansas law, given the text of his stipulation, which provides that it applies only to "the class as alleged in the complaint to which this stipulation is attached . . . ." (Complaint, Exhibit A.)[7]

---

[7] If Plaintiff seeks remand, he likely will rely upon *dicta* in *Bell v. Hershey Co.*, 557 F.3d 953 (8th Cir. 2009), and recent unpublished decisions in *Tuberville v. New Balance Athletic Shoe, Inc.*, No. 1:11-cv-01016, slip op. (W.D. Ark. Apr. 21, 2011) (Dawson, J.) and *Murphy v. Reebok Int'l, Ltd.*, Case No. 4:11-cv-214-DPM, slip op. (E.D. Ark. Apr. 22, 2011) (Marshall, J.). None of these decisions are on point here. In *Bell*, the court commented, in *dicta*, that a binding stipulation might bar removal, citing pre-CAFA jurisprudence on stipulations that the amount in controversy is below $75,000. *See Bell*, 557 F.3d at 958. But *Bell* did not address fraudulent framing of a class definition or what a binding stipulation must contain in order for it to be effective in barring removal. *Tuberville* and *Murphy* are likewise inapposite for several reasons. First, the stipulations in those cases were substantially broader than in the case at bar because: (1) putative class *counsel* signed a binding stipulation that they would not seek or accept an award of attorneys' fees that would allow the total amount in controversy (including attorneys' fees) to go above $5 million; (2) unlike here, the stipulations were *not*, by their own terms,

29. In addition, when Plaintiff served the Complaint, he also served a First Request For Admissions and a First Set of Interrogatories over 100 pages in length.[8] These requests seek a vast amount of information regarding Standard Fire's policies and practices with respect to GCOP and with respect to homeowners' insurance claims in general. The vast majority of that material would not be necessary or even useful for purposes of proving a simple breach of contract. This discovery is clearly intended and directed towards establishing claims that go beyond a simple breach of contract.

## Exceptions to CAFA Jurisdiction

30. None of the exceptions to CAFA jurisdiction applies. Standard Fire is not a citizen of the state in which the action was filed, i.e., Arkansas. Accordingly, Sections 1332(d)(3) and (d)(4) do not apply. Section 1332(d)(5)(A) does not apply because Standard Fire, the only defendant, is not a State, State official or other governmental entity against which this Court may be foreclosed from ordering relief. Section 1332(d)(5)(B) does not apply because the number of members of all proposed plaintiff classes in the aggregate is not less than 100. Section 1332(d)(9) does not apply because Plaintiff's claims do not involve securities or the internal affairs or governance of a corporation or other form of business enterprise.

---

inapplicable to an amended complaint; and (3) neither case involved fraudulent framing of a class definition. *See Tuberville,* slip op. at 3; *Murphy,* slip op. at Appendix A. Second, both opinions were based on a premise that Arkansas state law would *bar* the plaintiff from later seeking more than $5 million. *See Tuberville,* slip op. at 9; *Murphy,* slip op. at 4-5. That is no longer the law of Arkansas—as amended effective March 18, 2011, Ark. Code § 16-63-221(b) now expressly provides that a stipulation regarding the amount in controversy is not binding if a complaint is amended. Third, in both *Tuberville* and *Murphy* the courts did not even need to reach the enforceability of the stipulation because the courts concluded that the defendants failed to demonstrate adequately that the actual amount in controversy exceeded $5 million. *See Tuberville,* slip op. at 11, *Murphy,* slip op. at 6.

[8] The discovery requests are not attached hereto because of their extraordinary length. If Plaintiff files a motion to remand, Standard Fire will submit a copy of the discovery requests with its response.

Case 4:11-cv-04044-PKH  Document 1   Filed 05/18/11  Page 14 of 15 PageID #: 14

31.    Accordingly, this Court has original jurisdiction under CAFA.

## REMOVAL PROCEDURE

32.    A copy of this notice of removal is being served upon all known counsel of record, along with a copy of the Notice to the Clerk of Court for the Circuit Court of Miller County, Arkansas, which is being filed simultaneously in that court.

33.    Copies of all process, pleadings, and orders served upon Standard Fire in the state court action are attached as Exhibit A hereto.

**WHEREFORE**, Standard Fire hereby provides notice that this action is duly removed to this Court.

MITCHELL, WLLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8869
Facsimile: (501) 918-7869
lpruitt@mwlaw.com

By:    Lyn P. Pruitt, Ark. Bar No. 84121

*Attorneys for Defendant*
*The Standard Fire Insurance Company*

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon

counsel listed below on this 18th day of May, 2011:

John C. Goodson
Matt Keil
Keil & Goodson P.A.
406 Walnut Street
Texarkana, Arkansas 71854
*(via hand delivery)*

Brad E. Seidel
Nix, Patterson & Roach, LLP
3600 Capital Texas Highway
Building B, Suite 350
Austin, TX 78746
*(via U. S. Mail)*

Lyn P. Pruitt

- 15 -