**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **GREG KNOWLES, Individually and as Class** | § | |
| **Representative on Behalf of all Similarly** | § | |
| **Situated Persons,** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| *v.* | § | **No. 4:11-cv-04044** |
| | § | |
| **THE STANDARD FIRE INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **DEFENDANT** | § | |

**PLAINTIFF'S MOTION TO REMAND AND
MOTION FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY**

Plaintiff Greg Knowles files this Motion to Remand and Motion for Leave to Conduct Limited Jurisdictional Discovery and would respectfully show the Court as follows:

## I.  INTRODUCTION

On March 19, 2013, the Supreme Court issued its decision in *Standard Fire Ins. Co. v. Knowles*, No. 11-1450 (U.S. Mar. 19, 2013) ("*Knowles* Slip op."). As a result, this Court's December 2, 2011 order of remand (Dkt. No. 13) has been vacated, and this Court has been directed to conduct "further proceedings consistent with this opinion" (*id.* at 7) to carry out the Supreme Court's mandate.

Plaintiff submits that the appropriate course is for this Court to consider federal subject-matter jurisdiction without reference to the stipulation attached to Plaintiff's complaint (Dkt. No. 1-2) and determine whether the $5 million federal amount-in-controversy requirement has been met, pursuant to 28 U.S.C. § 1332(d)(2). Although this Court's December 2, 2011 order of remand found that Standard Fire had "satisfied its initial burden of proving by a preponderance

1

of the evidence that the actual amount in controversy reaches, if not exceeds, the federal court's minimum threshold for jurisdiction pursuant to CAFA" (Dkt No. 13, at 6), that finding is no longer binding, and this Court should examine anew the jurisdictional amount in controversy alleged by Standard Fire.  This Court should undertake a fresh review of Standard Fire's evidence supporting its argument that the Court has CAFA jurisdiction, because the Court's prior order of remand was rendered under a different legal framework -- in the context of settled Eighth Circuit law clearly permitting Plaintiff to rely on a stipulation rather than to make an evidentiary showing of his own.

This Court has an independent duty to assure itself that the requisite amount-in-controversy is present.  Plaintiff therefore moves for remand and for leave to conduct limited jurisdictional discovery to supplement the instant motion.  Such discovery would consist of a single deposition pursuant to Fed. R. Civ. P. 30(b)(6) and a handful of interrogatories, requests for production, and requests for admission.  Plaintiff believes that the existing record already demonstrates that Standard Fire cannot meet its burden of showing the requisite amount-in-controversy by a preponderance of the evidence, but the limited supplemental discovery requested by Plaintiff is consistent with the Supreme Court's directive to conduct "further proceedings" to carry out its mandate.  *Knowles* Slip op., at 7.  The requested discovery is also warranted to establish a complete record for this Court's determination as to subject-matter jurisdiction.

## II.  PROCEDURAL HISTORY

### A.      Plaintiff's State-Court Lawsuit.

On April 13, 2011, Plaintiff filed this putative class action in the Circuit Court of Miller County, Arkansas, asserting only state-law claims, proposing a class limited to Arkansas

residents, and expressly seeking less than the federal jurisdictional threshold. *See* Dkt. No. 1-2. The complaint alleged that Standard Fire breached its insurance contract by underpaying claims for loss or damage to real property pursuant to homeowners' policies issued to Arkansas residents. Specifically, Plaintiff alleged that Standard Fire failed to pay for charges reasonably associated with retaining the services of a general contractor to repair or replace damaged property. These charges, known as general contractors' overhead and profit ("GCOP"), represent an extra 20% fee routinely assessed by contractors when repairing damaged property. *See* Dkt. No. 1-2, ¶¶ 1-5, 20-23, 32.

**B.     Prior Proceedings In This Court.**

On May 18, 2011, Standard Fire filed a Notice of Removal (Dkt. No. 1) in this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, which enables defendants to remove putative class actions to federal court when certain requirements are met, including that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Standard Fire asserted that the amount in controversy exceeded $5,000,000 based on the following calculations:

- First, Standard Fire stated that a review of its records regarding payments and deductibles on those claims falling within the definition of the proposed class indicated that the aggregate total of payments for structural losses and deductibles was $15,274,806. *See* Dkt. No. 1, ¶ 17. Standard Fire subsequently submitted the Affidavit of Brian Harton, director of product management and a business analysis lead at Standard Fire, who confirmed the total of $15,274,806 of payments for structural losses and deductibles. *See* Dkt. No. 9-9, ¶ 5. Using a 20% figure for GCOP, the Notice of Removal calculated the expected damages for the class as $3,054,961. *See* Dkt. No. 1, ¶ 17. Standard Fire's calculation assumed that it had not reimbursed any class members for GCOP.

- Standard Fire next added a 12% statutory penalty for breach of an insurance contract, based on Arkansas Code Annotated § 23-79-208(a)(1). The Notice of Removal computed the 12% statutory penalty as an additional $366,595, for a potential total compensatory damages award of $3,421,556. *See* Dkt. No. 1, ¶ 19.

3

- The Notice of Removal then added a projected award of attorneys' fees of $1,602,594. *See* Dkt. No. 1, ¶ 20. Standard Fire derived those fees by assuming that a court would award 40% of the total of (i) the presumed recovery of $3,421,556, and (ii) two years' worth of prejudgment interest at the maximum Arkansas state-court rate of 5% above the federal discount rate. *See* Dkt. No. 1, ¶ 20 n. 4.

Plaintiff disputed the basis for Standard Fire's calculation (Dkt. No. 7, at 16-17) but, in accordance with then-settled Eighth Circuit and Arkansas district court precedent regarding the validity of binding stipulations, *e.g., Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009), did not introduce evidence of his own regarding the amount in controversy. Rather, Plaintiff pointed to a binding stipulation attached as Exhibit A to the Complaint (Dkt. No. 1-2), which was executed prior to removal and which expressly limited the class recovery to less than the CAFA jurisdictional limit.

Plaintiff moved to remand this action to Arkansas state court, which this Court granted by order of December 2, 2011. *See* Dkt. No. 13. This Court accepted Standard Fire's calculations of expected GCOP damages for the class of $3,054,961, a 12% statutory penalty for breach of contract, and projected 40% attorneys' fees computed on the basis of both compensatory damages and prejudgment interest. *See* Dkt. No. 13, at 5. The Court explained that "this brings the total award up to $5,024,150, which exceeds the statutory maximum for state court jurisdiction by $24,150." *Id*.

Although this Court found that Standard Fire had met its initial burden of proving the requisite amount in controversy by a preponderance of the evidence (Dkt. No. 13, at 5-6), it held that "[t]he law in this circuit is clear that a binding stipulation sworn by a plaintiff in a purported class action will bar removal from state court if the stipulation limits damages to the state jurisdictional minimum." *Id.* at 6 (citing *Bell*, 557 F.3d at 958). This Court continued: "Various federal courts in Arkansas, including this one, have remanded several purported class actions to

4

state court using the guideline set forth in *Bell* regarding the effect of a plaintiff's binding stipulation."  *Id.* at 6-7 (citing *Thompson v. Apple, Inc.*, 2011 WL 2671312 (W.D. Ark. July 8, 2011); *Tomlinson v. Skechers U.S.A., Inc.*, Case No. 5:11-CV-05042-JLH (W.D. Ark. May 25, 2011); *Murphy v. Reebok Int'l, Ltd.*, 2011 WL 1559234 (E.D. Ark. April 22, 2011); *Tuberville v. New Balance Athletic Shoe, Inc.*, 2011 WL 1527716 (W.D. Ark. April 21, 2011)).

## C.    Prior Proceedings In the Eighth Circuit.

On January 4, 2012, the Eighth Circuit denied Standard Fire's petition for permission to appeal, without recorded dissent.  On February 2, 2012, the Eighth Circuit issued its decision in *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1072 (8th Cir. 2012), which affirmed an order of remand under CAFA based on a stipulation by the named plaintiff limiting the damages of putative class members to less than $5 million.  On March 1, 2012, the Eighth Circuit denied Standard Fire's petition for rehearing in this case, without recorded dissent.

## D.    The U.S. Supreme Court's Decision.

On August 31, 2012, the Supreme Court granted certiorari, and on March 19, 2013, it issued a decision holding that Plaintiff's stipulation did not defeat federal jurisdiction under CAFA.  The Court noted "divergent views in the lower courts" on the enforceability of such stipulations (*Knowles* Slip op. at 2-3 (citing *Rolwing*)) but opined that "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified."  *Id.* at 4.  The Supreme Court explained this Court's task on remand:

> For this reason, we believe the District Court, when following the statute to aggregate the proposed class members' claims, should have ignored that stipulation. Because it did not, we vacate the judgment below and remand the case for further proceedings consistent with this opinion.

*Id.* at 7.

## III.  ARGUMENT

**A.     Legal Standard Governing Cases Remanded By The U.S. Supreme Court.**

In the context of a Supreme Court decision remanding a case "for further proceedings consistent with this opinion," the Eighth Circuit has explained that "legal propositions which an appellate court settles on appeal ordinarily cannot be questioned again .... A corollary to [this principle] is the rule that, upon a reversal and remand for further consistent proceedings, the case goes back ... for a new determination of the issues presented as though they had not been determined before, pursuant to the legal principles enunciated in the appellate court's opinion, which must be taken as the law of the case." *Republican Party of Minnesota v. White*, 416 F.3d 738, 745 (8th Cir. 2005) (citation and internal quotation marks omitted).

Thus, this Court's task is to apply the legal principles enunciated by the Supreme Court to the subject-matter jurisdiction questions in this case, "as though they had not been determined before." *White*, 416 F.3d at 745 (citation and internal quotation marks omitted).  The Supreme Court explained that "the statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of Knowles' proposed class and determine whether the resulting sum exceeds $5 million." *Knowles* Slip op. at 3.  Accordingly, the task that this Court should perform on remand is adding up the value of class members' claims, pursuant to the Supreme Court's directive.

Although in 2011 this Court found that Standard Fire had met its initial burden of proving the requisite amount in controversy by a preponderance of the evidence (Dkt. No. 13, at 5-6), that finding is not binding at this stage of the proceeding, for three reasons.

**First**, the Supreme Court's decision expressly stated that "we vacate the judgment below." *Knowles* Slip op. at 3.  Because this Court's prior remand order has been vacated, any

6

findings in it are not binding and indeed are void.  In *Creighton v. Anderson*, 922 F.2d 443 (8th Cir. 1990), the Eighth Circuit held that findings in a previous decision vacated and remanded by the Supreme Court were no longer law of the case:

> [W]e reject the Creightons' argument that *Creighton I* establishes the existence of factual disputes as the law of the case. This argument overlooks the fact that the Supreme Court vacated *Creighton I* and remanded for further proceedings consistent with its opinion. A vacated opinion has no further force and effect. A vacated opinion is deprived of its standing, so that the law of the case doctrine is inapplicable.

*Id.* at 449 (citations omitted); *see also Riha v. International Tel. & Tel. Corp.*, 533 F.2d 1053, 1054 (8th Cir.1976) ("A judgment vacated on appeal is of no further force and effect.").

**Second**, the prior proceedings before this Court occurred under a different legal framework.  As this Court recognized, prior to the Supreme Court's decision in *Knowles*, Eighth Circuit precedent "clear[ly]" permitted plaintiffs to use a stipulation to ensure that the amount-in-controversy in a putative class action remained below the CAFA jurisdictional threshold.  Dkt. No. 13, at 6.  The Eighth Circuit approved of stipulations in *Bell*, 557 F.3d at 958, and *Rolwing*, 666 F.3d at 1072, and numerous district courts followed the same practice.  *E.g.*, *Thompson v. Apple, Inc.*, 2011 WL 2671312 (W.D. Ark. July 8, 2011); *Tomlinson v. Skechers U.S.A., Inc.*, Case No. 5:11-CV-05042-JLH (W.D. Ark. May 25, 2011); *Tomlinson v. Reebok, Int'l Ltd.*, Case No. 5:11-CV-05036 (W.D. Ark. May 25, 2011); *Murphy v. Reebok Int'l, Ltd.*, 2011 WL 1559234 (E.D. Ark. April 22, 2011); *Tuberville v. New Balance Athletic Shoe, Inc.*, 2011 WL 1527716 (W.D. Ark. April 21, 2011); *Harris v. Sagamore Ins. Co.*, 2008 WL 4816471 (E.D. Ark. 2008).

Standard Fire has recognized as much.  It told the U.S. Supreme Court that stipulations had been used in "dozens of post-CAFA cases," and that their use had been approved by "several Arkansas federal district court judges," as well as by "the Eighth Circuit."  Petition for Certiorari in No. 11-1450, at 8.  Given the circumstances, Plaintiff was reasonable in not burdening the

Court with evidence of his own regarding the amount in controversy and instead relying on a binding stipulation to simplify the Court's jurisdictional determination.

**Third**, this Court has an independent duty to assure itself that the requirements of federal subject-matter jurisdiction are satisfied. "Subject matter jurisdiction is something the courts have a duty to examine at all stages of the litigation, and ***the law of the case doctrine does not foreclose reconsideration of subject matter jurisdiction.***" *Hall v. USAble Life*, 774 F. Supp. 2d 953, 955 (E.D. Ark. 2011) (emphasis added; citing *Crawford v. F. Hoffman–La Roche, Ltd.,* 267 F.3d 760, 764 n. 2 (8th Cir.2001)). Thus, in *Hall*, after a motion to remand was originally denied, the court revisited subject-matter jurisdiction and remanded the case, explaining "[t]he Court finds that because it has a duty sua sponte to examine subject matter jurisdiction at all stages of the litigation, the law-of-the-case doctrine does not apply to the previous ruling." *Id. See also Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011) ("It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction in every case. This obligation includes the concomitant responsibility 'to consider sua sponte [the court's subject matter] jurisdiction ... where ... [the court] believe[s] that jurisdiction may be lacking.'") (brackets in original) (quoting *Clark v. Baka*, 593 F.3d 712, 714 (8th Cir.2010) (per curiam)); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir.1990) ("Federal subject matter jurisdiction ... must be raised sua sponte by a federal court when there is an indication that jurisdiction is lacking.") (citation omitted).[1]

---

[1] *See also American Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 515 (4th Cir.2003) ("Law of the case is just that however, it does not and cannot limit the power of a court to reconsider an earlier ruling. The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority. These questions are of such overriding import that the Supreme

Objections to subject-matter jurisdiction are not waivable. *See Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region*, 558 U.S. 67, 130 S. Ct. 584, 596 (2009); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.") (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)); *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) ("No party can waive the [subject matter jurisdiction] defect or consent to jurisdiction.").

The relevant federal jurisdictional statute provides that "[i]f ***at any time*** before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c) (emphasis added). Indeed, the question of subject-matter jurisdiction extends even beyond a "final judgment" in the federal district court: "A litigant generally may raise a court's lack of subject-matter jurisdiction ***at any time*** in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (emphasis added) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte* ); *Capron v. Van Noorden*, 2 Cranch 126, 127 (1804) (judgment loser successfully raised lack of diversity jurisdiction for the

---

Court has, in other contexts, carved out special exceptions for them to the general rules of procedure. So, for example, a party can challenge subject matter jurisdiction for the first time on appeal even though, in most contexts, issues not raised below are considered waived."); *Baca v. King*, 92 F.3d 1031, 1035 (10th Cir. 1996) (the law of the case doctrine "is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case"); *DiLaura v. Power Authority of State of New York*, 982 F.2d 73, 77 (2d Cir. 1992) (subject matter jurisdiction particularly suited for reconsideration; doctrine of law of the case permits change of position if it appears that the court's original ruling was erroneous); *Labastida v. McNeil Technologies, Inc.,* 2011 WL 767169 (S.D. Cal. February 25, 2011) (granting a class action plaintiff's request for district court to "reconsider the evidentiary record related to [the defendant's] burden of establishing the amount in controversy" and remanding case to state court).

first time before the Supreme Court)); *see also* FED. R. CIV. P. 12(h)(3) ("***Whenever*** it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (emphasis added).

"Thus, ***if it develops that the requisite amount in controversy was never present, even if that fact is not established until the case is on appeal,*** the judgment of the District Court cannot stand." *Meritcare Inc. v. St. Paul Mercury Ins. Co*., 166 F.3d 214, 218 (3d Cir. 1999) (emphasis added).  For example, the Eighth Circuit found the amount in controversy to be inadequate to support federal jurisdiction (even after the district court had entered a final judgment on the merits) in both *James Neff Kramper Family Farm P'ship v. IBP, Inc*., 393 F.3d 828, 831 (8th Cir. 2005), and *Rasmussen v. State Farm Mut. Auto. Ins. Co*., 410 F.3d 1029, 1031 (8th Cir. 2005).

For all of these reasons, this Court's previous finding that Standard Fire had met its initial burden of proving the requisite amount in controversy by a preponderance of the evidence is not binding at this stage of the case.  Pursuant to the Supreme Court's mandate, this Court should conduct "further proceedings" to determine whether there is federal subject-matter jurisdiction over the instant action.

**B.      The $5 Million CAFA Amount-In-Controversy Requirement Is Not Met.**

Plaintiff requests leave to conduct limited jurisdictional discovery to provide the Court with a more complete evidentiary basis for deciding the jurisdictional question.

Nevertheless, as the record presently stands, Standard Fire has failed to meet its burden of demonstrating federal jurisdiction.  *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194 (2010) (reaffirming in the CAFA context that "[t]he burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it").  A removing defendant's burden is to "show by a preponderance of the evidence [that] ***the claims originally asserted*** by [Plaintiff] could, that

10

is might, legally satisfy the amount in controversy requirement." *James Neff Kramper Family Farm Partnership v. IBP, Inc.* 393 F.3d 828, 831 (8th Cir.2005) (emphasis added), citing *Kopp v. Kopp, 280* F.3d 883, 885 (8th Cir.2002). In other words, the "jurisdictional inquiry focuses on **the claims made at the time of removal."** *James Neff Kramper*, 393 F.3d at 834 (emphasis supplied).

In the Notice of Removal, Standard Fire calculated the aggregated damages for the class as $3,054,961. *See* Dkt. No. 1, ¶ 17. Even when it added $366,595 (representing a 12% statutory penalty under state law for breach of an insurance contract), its calculated aggregate damages came to merely $3,421,556. *Id.* at ¶ 19. Standard Fire was able to generate $5,000,000 in amount in controversy only by assuming that it had not reimbursed any class members for GCOP and by adding a wholly speculative projected award of attorneys' fees amounting to 40% of a sum reflecting both the presumed recovery and two years' worth of prejudgment interest. *Id.* at ¶ 20 & n.4.

There are at least four demonstrable flaws in Standard Fire's calculation, and each of them independently establishes that the $5 million CAFA jurisdictional amount cannot be met in this case:

*First*, Standard Fire's entire attorneys' fee estimate is impermissibly speculative and should be stricken. (Discussed *infra* at § III(B)(1)).

*Second*, Standard Fire bases its projected award of attorneys' fees on a percentage of not only its estimated compensatory damages amount but also two years' worth of prejudgment interest. However, CAFA provides that the amount in controversy is to be computed "exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Prejudgment interest should not be considered in computing amount in controversy. Standard Fire's impermissible inclusion of prejudgment

11

interest in the calculation of attorneys' fees is an independent basis for granting remand, and is discussed *infra* at § III(B)(2).

*Third*, Standard Fire included a 40% attorney fee on prejudgment interest that purportedly accrued on a 12% statutory penalty. However, under Arkansas law prejudgment interest does not accrue on statutory penalties, and therefore such prejudgment interest (and fees on that prejudgment interest) must be excluded from the amount "in controversy." (Discussed *infra* at § III(B)(3)). This defect is also an independent basis for granting remand.

*Fourth*, Standard Fire failed to exclude amounts of GCOP that have already been paid, and are therefore not "in controversy." (Discussed *infra* at § III(B)(4)). This defect is also an independent basis for granting remand.

Standard Fire failed to meet its burden to show by a preponderance of the evidence that more than $5 million is in controversy, and the motion to remand must be granted.

### 1.    Standard Fire's Estimate of Attorney's Fees Is Impermissibly Speculative.

Standard Fire's attorneys' fee estimate is impermissibly speculative and should be stricken. To arrive at the 40% figure, Standard Fire relies on *Capital Life & Accident Insurance Co. v. Phelps*, 66 S.W.3d 678 (Ark. Ct. App. 2002), which is completely distinguishable from this case and offers no support to Standard Fire. In *Phelps*, the Arkansas court of appeals did not independently calculate the reasonableness of a fee, but merely upheld the chancellor's award of 40% under an abuse-of-discretion test. The court of appeals noted eight factors to be assessed after completion of a case, including "the time and labor required to perform the service properly" and "the result obtained." *Id.* at 682. The court added that the factors were a "guide[]" but "there is no fixed formula in determining the reasonableness of an award of attorney fees." *Id.* at 682-83. The court of appeals concluded that, "[c]onsidering that this case has been tried

12

twice and appealed three times, we see no abuse of discretion in the award in this case." *Id.* at 683.

Here, the *Capital Life* factors cannot be meaningfully assessed at the outset of this case, and there is certainly no basis for assuming that the case will be "tried twice and appealed three times." *Id.* Accordingly, the attorneys' fees component of Standard Fire's amount-in-controversy calculation is entirely speculative and should be disregarded. Numerous courts have held that attorneys' fees should not be considered in determining the amount in controversy where they are purely speculative.[2]

This Court should apply that principle and disregard Standard Fire's estimated attorneys' fee. There would be an important ancillary benefit to such a ruling: it would allow this Court to side-step a disagreement in the judiciary over whether the attorneys' fees to be included in the jurisdictional amount are limited to those that had already accrued ***at the time of removal***. "[C]ourts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should

---

[2] *Bartnikowski v. NVR, Inc.*, 307 Fed.Appx. 730, 736 n.12 (4th Cir. 2009) ("At this stage of litigation, however, an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation."); *City of O'Fallon, Mo. v. CenturyLink, Inc.*, 2013 WL 1036514, *7 n.2 (E.D. Mo. Mar. 14, 2013) ("Although punitive damages and attorneys' fees may be considered in determining the jurisdictional amount in controversy, the defendants have failed to argue consideration of these factors, nor have provided any evidence in support of any calculations of same. . . . [T]he Court cannot and will not speculate as to whether a combination of compensatory damages, punitive damages (if allowable), and/or attorneys' fees meet the required jurisdictional amount."); *Velasquez v. HMS Host USA, Inc.*, 2012 WL 6049608, *9 (E.D. Cal., Dec. 5, 2012) (attorneys' fee estimate too speculative to be included in amount in controversy calculation); *Chochorowski v. Home Depot USA*, 585 F. Supp. 2d 1085, 1094-95 (E.D. Mo. 2008) ("[T]he Court cannot determine whether the combination of compensatory and punitive damages and attorneys' fees will satisfy CAFA's $5 million jurisdictional threshold"); *Wastier v. Schwan's Consumer Brands*, No. 07-CV-1594, 2007 WL 4277552, *3 (S.D. Cal. Dec.5, 2007) ("[E]ven assuming that the correct approach is to include a reasonable estimate of fees likely to be recovered, Defendant['s] calculations are speculative, lack evidentiary support, and are conclusory at best.").

take into account fees likely to accrue over the life of the case." *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, *19 (C.D. Cal. June 22, 2012).[3]

The Supreme Court's decision in *Knowles* appears to support the former approach. The Court opined that "[f]or jurisdictional purposes, our inquiry is limited to examining the case as of the time it was filed in state court," and "[f]ederal jurisdiction cannot be based on contingent future events." *Knowles* Slip op. at 4 (second brackets in original; citations and internal question marks omitted). The possibility that Plaintiff's counsel might eventually be appointed class counsel and could ultimately receive an attorneys' fees award as large as 40% for work over the course of the entire litigation would seem to be precisely the kind of "contingent future event" that cannot serve as the basis for asserting federal jurisdiction.

Finding federal CAFA jurisdiction as Standard Fire seeks would require this Court to wade into the ongoing dispute over whether the attorneys' fees to be included in the jurisdictional amount are limited to those that had already accrued at the time of removal. This issue is one of first impression in the Eighth Circuit post-*Knowles*, and the Supreme Court's

---

[3] Compare *Brady v. Mercedes–Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal"), with *Dukes v. Twin City Fire Ins. Co.*, No. CV–09–2197–PHX–NVW, 2010 WL 94109, *2 (D. Ariz. Jan.6, 2010) ("This Court concludes that the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal. Future attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal"); *Faulkner v. Astro–Med, Inc.*, No. C 99–2562 SI, 1999 WL 820198, *4 (N.D. Cal. Oct.4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," citing *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir.1993)); *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (declining to consider post-removal events in calculating attorneys' fees for purposes of assessing removal); *Green v. Party City Corp.*, No. CV–01–09681 CAS (Ex), 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002) (calculating attorneys' fees on the basis "only [of] work done by plaintiff's counsel prior to removal").

opinion indicates that, should this Court reach the question, it should hold that only attorneys' fees that have accrued at the time of removal may be considered in computing the amount in controversy.  However, this Court need not resolve that question if it remands this case to state court on the ground that Standard Fire's estimate of attorneys' fees is simply too speculative to be included in the amount-in-controversy calculation.

### 2. Standard Fire's Amount-In-Controversy Calculation Impermissibly Includes Prejudgment Interest.

Standard Fire's attorney fee calculation, in addition to being invalid as discussed *supra* at § III(B)(1), is impermissibly based on prejudgment interest as a term or component term of the calculation.  In other words, Standard Fire calculates attorneys' fees, in part, on prejudgment interest.  Standard Fire calculates a 40% attorney fee on estimated compensatory damages ("breach of contract damages plus the penalty"; Dkt. 2 at 7, ¶¶ 19-20), and an additional 40% attorney fee on prejudgment interest. Only by including the 40% attorney fee on prejudgment interest does Standard Fire calculate an amount in controversy in excess of $5,000,000. However, prejudgment interest cannot be included as part of the amount in controversy calculation.  28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, ***exclusive of interest*** and costs, and is a class action in which . . .") (emphasis added).  Courts applying the parallel language in other sections of 28 U.S.C. § 1332, including subsections (a) and (b), have concluded that "interest that accrues solely due to a party's delay in paying the principal does not count towards the amount in controversy."  *Mace v. Domash*, 550 F. Supp. 2d 101, 105 (D. D.C. 2008) (citing *Principal Mut. Life Ins. Co. v. Juntunen,* 838 F.2d 942, 943 (7th Cir. 1988); *Regan v. Marshall,* 309 F.2d 677, 678 (1st Cir.1962)).

This rule is well settled.  Over 80 years ago, the Eighth Circuit held that prejudgment interest could not be considered in amount-in-controversy calculations because it was "compensation fixed by ordinance for detention of money by the owners of property assessed." *City of Pawhuska, Oklahoma, ex rel, Graham v. Midland Valley R. Co.*, 33 F.2d 487, 488 (8th Cir. 1929); *see also Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 473 (1st Cir. 1979) ("Interest is specifically excluded under the words of the statute and the established rule is that it is not to be included as part of the jurisdictional amount.") (citing, *inter alia*, *City of Pawhuska, Oklahoma, ex rel, Graham v. Midland Valley R. Co.*, 33 F.2d 487 (8th Cir. 1929)).

More than half a century ago, this Court followed the same approach:

> In determining the amount of plaintiff's claim it has never before been suggested in the reported cases that interest on a judgment could be used to enhance the amount in controversy in an action of this character. Interest in such case is compensation fixed by law for the detention of money rightfully due another. It is interest eo nomine, and its computation to obtain jurisdiction is expressly interdicted.

*Reynolds v. Reynolds*, 65 F. Supp. 916, 918 (W.D. Ark. 1946).

Standard Fire apparently recognizes that prejudgment interest is not to be directly included in the calculation because Standard Fire omitted prejudgment interest as an express element of the amount in controversy figure.  However, by including a 40% attorney fee on prejudgment interest in the attorneys' fee calculation, Standard Fire indirectly includes 40% of the overall prejudgment interest in its amount-in-controversy calculation -- a blatant end-run around the express language of the CAFA statute that should not be permitted.

Tellingly, Standard Fire does not disclose in its Notice of Removal the precise amount of prejudgment interest on which it bases it attorney fee calculation, perhaps because it would highlight the improper use of prejudgment interest to reach the $5,000,000 CAFA threshold. Rather, Standard Fire merely posits that "attorneys' fees calculated, as in *Phelps*, as 40% of

16

breach of contract damages plus the penalty and prejudgment interest, would be an additional amount in excess of $1,602,594 . . ."  Notice of Removal, Dkt. No. 1, at 7, ¶ 20.  Standard Fire then includes, in a footnote, a vague description of how it went about calculating the prejudgment interest on which it based its attorney fee calculation.  *Id.* at 7, n.4.  Again, however, the text of Standard Fire's footnote fails to disclose the specific amount of prejudgment interest it used as the basis for its calculation.

While not spelled out in detail in the Notice of Removal or briefing on remand, the arithmetic reveals that Standard Fire computed overall prejudgment interest as $584,929,[4] of which Standard Fire included 40% (or $233,971) in the attorney' fee calculation (40% x $584,929 = $233,971).  Accordingly, even if Standard Fire could establish that the 40% attorney fee is not *per se* speculative, this Court should strike the $233,971 portion of the attorneys' fee calculation that is based on $584,929 of prejudgment interest -- thereby ensuring compliance with the terms of § 1332(d)(2) that the amount in controversy must "exceed[] the sum or value of $5,000,000, ***exclusive of interest.***"  After such a deduction, Standard Fire's amount-in-controversy calculation would be reduced to $4,790,179.[5]  As this amount is well less than $5,000,000, the case must be remanded.

---

[4] As noted, in its Notice of Removal, Standard Fire stated that the 40% claimed attorney fee should be awarded based on the sum of the breach of contract damages of $3,054,961, the 12% penalty of $366,595, and prejudgment interest (not specified).  The 40% fee calculated on the sum of those amounts was of $1,602,594.  In order to have the calculation work out as presented by Standard Fire, prejudgment interest must be $584,929, or 17.0954% of $3,421,556 (the sum of $3,054,961 plus $366,595).

[5] As arithmetic cross-check, Standard Fire posits $3,421,556 total compensatory damages (which includes breach of contract and a statutory penalty). 40% of this amount is $1,368,623. Even if the speculative 40% fee of $1,368,623 is used, the total amount in controversy is $4,790,179, which is less than the $5,000,000 threshold. This is the calculation Standard Fire should have presented to the Court. Instead, it used a vague calculation that embedded prejudgment interest in the base amount used to calculate attorneys' fees.

### 3.        Prejudgment Interest Is Calculated On Damages, Not Statutory Penalties.

Even if the 40% attorneys' fee could be computed on the basis of prejudgment interest –
and it may not be – there would be a separate legal defect in Standard Fire's calculation: it
appears to include (as part of the estimated attorneys' fee) prejudgment interest on the Arkansas
statutory penalty for breach of insurance contract.  In its Notice of Removal, citing the provisions
of Ark. Code Ann. § 23-79-208(a)(1), Standard Fire added a 12% statutory penalty of $366,595
(12% x $3,054,961) to arrive at a "total compensatory damage award of $3,421,556."  Notice of
Removal, Dkt. No. 1, at 6-7, ¶¶ 17-19.  And, as noted previously, Standard Fire acknowledges
that it calculated attorneys' fees as "40% of breach of contract damages plus the penalty and
prejudgment interest, would be an additional amount in excess of $1,602,594 . . ."  *Id.*  at 7, ¶ 20.
Standard Fire's calculation impermissibly computed prejudgment interest of $62,671 as being
owed on the statutory penalty (17.0954%  x  $366,595 = $62,671), and then claimed a 40%
attorneys' fee of $25,068 on that prejudgment interest (40% x $62,671 = $25,068).

Prejudgment interest on the statutory penalty must be excluded from the amount-in-
controversy calculation, both directly and via the asserted 40% attorney's fee.  "[A]n amount that
a plaintiff claims is not 'in controversy' if no fact finder could legally award it." *Kopp v. Kopp*,
280 F.3d 883, 885 (8th Cir. 2002). Arkansas does not allow prejudgment interest on additional
damages awarded as a statutory penalty, and thus Plaintiff could not recover prejudgment interest
on the 12% statutory penalty that might be awarded for a cause of action pursuant to Ark. Code
Ann. § 23-79-208.  Because it could not be legally recovered, prejudgment interest on the
statutory penalty interest is not "in controversy," nor could attorneys' fees be recovered on the
phantom interest.  *See, e.g., Advance America Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d
1170, 1176 (8th Cir. 2008) ("Since [plaintiff] has not alleged that she suffered physical injury or

that Advance America sought intentionally to inflict mental distress on her, the argument that she might recover damages for emotional distress exceeding the $75,000 amount in controversy requirement is inconsistent with established Arkansas law."). Just as Arkansas law precluded certain elements of the amount-in-controversy calculation in *Advance America*, so here Arkansas law precludes any argument by Standard Fire that prejudgment interest -- and, therefore, attorneys' fees as a percentage of such interest -- can be recovered on a full award of the statutory penalty.

Arkansas precedent is clear: Plaintiff cannot recover prejudgment interest on statutory penalties awarded by the court. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Brown,* 48 Ark. App. 136, 892 S.W.2d 519 (1995) (prejudgment interest is not allowed on the amount constituting a statutory penalty and fees because "**penalty** and attorney's fees **did not become due until they were awarded by the court**.") (emphasis added); *Wheeler Motor Co., Inc. v. Roth*, 315 Ark. 318, 867 S.W.2d 446, 451-52 (1993) (prejudgment interest could not be recovered on amounts awarded as punitive damages because such damages were not due until verdict awarded punitive damages).

The Arkansas Supreme Court's reasoning in *Brown* applies with equal force here: because an award of the statutory penalty of 12% will not become due until awarded by a court, prejudgment interest is not allowed. *See, Brown*, 892 S.W.2d at 524. Because ***additional statutory penalty damages are determined and awarded only by a court in a judgment following a lawsuit***, prejudgment interest on such statutory penalty damages is not allowed. *Id.* Since prejudgment interest is not recoverable under Arkansas law on statutory penalty damages, such amounts are not "in controversy." *See, e.g., Advance America Servicing*, 526 F.3d at 1176 (because plaintiffs could not recover damages for emotional distress, such amounts were not part

of amount in controversy); *Kopp*, 280 F.3d at 885 (noting that an amount is not "'in controversy' if no fact finder could legally award it.").

Excluding prejudgment interest on the statutory penalty from the asserted 40% attorneys' fee would reduce Standard Fire's amount-in-controversy calculation to ***below*** the CAFA $5 million threshold.  Such an exclusion would decrease Standard Fire's attorneys' fees calculation by $25,068 (as discussed at the very beginning of § III(B)(3)).  Reducing Standard Fire's proposed amount in controversy ($5,024,150) by $25,068 demonstrates that the amount in controversy can be no more than $4,999,082.  As the Court is without jurisdiction, remand is required.

**4.     Standard Fire Inflates The Classwide Compensatory Damages.**

Plaintiff seeks to recover damages only as a result of Standard Fire "failing to pay general contractors' overhead and profit," which represents an additional 20% fee routinely assessed by contractors when repairing damaged property.  *See* Plaintiff's Complaint (Dkt. No. 1-2) at ¶¶ 1, 27-28, 30, 32, and 44.  Therefore, amounts that ***have already been paid*** for GCOP by Standard Fire are obviously not "in controversy."  However, Standard Fire's calculation (in the Notice of Removal, Dkt. No. 1, and in the Harton Affidavit, Dkt. No. 9-9) regarding the amount supposedly in controversy is improperly based on ***all*** claims within the class period, without regard to whether GCOP was already paid on the claim.  Standard Fire simply added up the "aggregate total payments for structural losses and deductibles" during the class period, Notice of Removal, Dkt. No. 1, ¶ 16, regardless of whether GCOP was paid on the claims.  The total claims come to $15,274,806.  *Id.*  Standard Fire then multiplies this sum by 20% to arrive at its estimated compensatory damages for the class.  *Id.*, ¶ 17.

Thus, Standard Fire's assertion that $5,024,150 is supposedly in controversy improperly includes claims for which overhead and profit ***was paid***, even though such claims are not genuinely "in controversy."  By taking 20% of the aggregate total of prior payments and deductibles during the class period, Standard Fire fails to deduct GCOP that has already been paid and thereby improperly inflates the amount in controversy.  When the claims for which overhead and profit has already been paid by Standard Fire are removed from the calculation, there will clearly be less than $5 million "in controversy."

Standard Fire's calculations determine the amount in controversy to be $5,024,150 by starting with an actual damages figure, adding a 12% penalty, and then adding a 40% attorney's fee (which itself includes a component impermissible calculated on prejudgment interest).  If Standard Fire already paid out as little as $16,000 in GCOP in the State of Arkansas during the class period (and Plaintiff anticipates that the amount is significantly more), then less than $5 million is actually in controversy even when using Standard Fire's speculative attorney fee percentage and invalid prejudgment interest calculation.

The following calculations demonstrate the importance of the accounting for the precise amount of GCOP included by Standard Fire in its amount in controversy calculation:

|  | Defendants' Calculation | Alternative Calculation |
|---|---|---|
| Total Claims | $15,274,806 | $15,274,806 |
| GCOP (20% of Total Claims) | $ 3,054,961 | $ 3,054,961 |
| Less GCOP Already Paid | <$         0> | <$     16,000> |
| **Net GCOP Still Unpaid** | **$ 3,054,961** | **$ 3,038,961** |
| Plus 12% Penalty | $     366,595 | $     364,675 |
| Subtotal (Compensatory Award) | $ 3,421,556 | $ 3,403,636 |
| Plus Attorneys' Fees (40%)[6] | $ 1,602,594 | $ 1,594,201[7] |
| TOTAL | $ 5,024,150 | $ 4,997,837 |

Standard Fire, as payor of the GCOP, is in the best position to provide specific data to the Court regarding the scope of the prior payments. Standard Fire's failure to account for previously-paid GCOP renders its evidence deficient to support this Court's jurisdiction.

Because Standard Fire's calculations fail to deduct claims that are not "in controversy," this Court should either permit limited jurisdictional discovery (*see* Part III-C, *infra*), or simply hold that Standard Fire has failed to meet its burden of demonstrating the requisite amount in controversy. *See Hertz Corp.*, 130 S. Ct. at 1194-95 (reaffirming in the CAFA context that the burden may be satisfied only by "competent proof" of the jurisdictional facts in question). Any doubt as to federal jurisdiction must be resolved in favor of remand. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *see also Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009) ("[T]he burden of showing federal jurisdiction is on the defendant removing under CAFA. This is also the conclusion reached by the seven other circuits that have

---

[6] *See* Sections (III)(B)(1), (2) & (3), *supra* for a discussion of flaws that exist in Standard Fire's calculation.

[7] Plaintiff has used the same methodology presented by Standard Fire in calculating the attorney' fees. As noted in Sections (III)(B)(1) & (2), *supra,* Standard Fire's methodology is defective, and Plaintiff reserves all rights to present further briefing on this point.

considered this issue.") (citing *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008) (compiling cases)) (internal citation omitted).

**C.**     **Limited Jurisdictional Discovery Is Appropriate To Complete The Factual Record.**

Although Plaintiff submits that demonstrable defects in the existing record are sufficient to warrant an order remanding the instant action to state court, Plaintiff requests leave to conduct limited supplemental discovery to establish a complete record for this Court's determination as to subject-matter jurisdiction. Such discovery is consistent with the Supreme Court's directive to conduct "further proceedings" to carry out its mandate. *Knowles* Slip op., at 7.

The requested discovery is attached as Ex. A. In particular, Plaintiff seeks leave to pursue:

a)     four request for production, nine interrogatories, and eight requests for admission to explore the information contained in the affidavit of Brian Harton (Dkt. No. 9-9), previously filed in this Court by Standard Fire in connection with its opposition to Plaintiff's prior motion to remand. Mr. Harton's affidavit provided the total of payments for structural losses and deductibles on which Standard Fire's compensatory damages estimates rely; and

b)     a single deposition pursuant to Fed. R. Civ. P. 30(b)(6) to address the basis for the information contained in the Harton affidavit.

The requested discovery is tailored to the jurisdictional issues raised by Standard Fire. It is not burdensome and can be completed expeditiously.

## IV.  CONCLUSION

Plaintiff's motion for remand should be granted, or, in the alternative, Plaintiff's motion for leave to conduct limited jurisdictional discovery to supplement the instant motion should be granted.

Respectfully submitted,

By:    /s/ W.H. TAYLOR
W.H. TAYLOR, #81154
WILLIAM B. PUTMAN, #91198
STEVAN E. VOWELL, #75134
**TAYLOR LAW PARTNERS, LLP**
303 E. Millsap Road
P.O. Box 8310
Fayetteville, Arkansas 72703
Telephone:   (479) 443-5222
Facsimile:   (479) 443-7842

JOHN C. GOODSON, #90018
MATT KEIL, #86099
**KEIL & GOODSON, P.A.**
406 Walnut Street
Texarkana, AR  71854
Telephone:      (870) 772-4113
Facsimile:      (870) 773-2967

BRAD E. SEIDEL, #2007122
**NIX, PATTERSON & ROACH, LLP**
3600 Capital Texas Highway
Bldg. B, Ste. 350
Austin, Texas  78746
Daingerfield, TX  75638
Telephone:     (903) 645-7333
Facsimile:     (903) 645-4415

RICHARD E. NORMAN
TEXAS BAR NO. 00788128
R. MARTIN WEBER, JR.
TEXAS BAR NO. 00791895
**CROWLEY NORMAN LLP**
Three Riverway, Suite 1775
Houston, Texas  77056
Telephone:      (713) 651-1771
Facsimile:      (713) 651-1775

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, W.H. Taylor, hereby certify that on the 28th day of March, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of the filing to the following:

Lyn P. Pruitt
Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.
425 West Capitol Avenue, Ste. 1800
Little Rock, Arkansas  72201
*Attorneys for Defendant The Standard Fire Insurance Company*

*/S/ W.H. TAYLOR*
W.H. TAYLOR

25