IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GREG KNOWLES, individually and as class
representative on behalf of all similarly situated
persons within the State of Arkansas                                        PLAINTIFF

v.                                      No. 4:11-cv-04044

THE STANDARD FIRE INSURANCE COMPANY                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff Greg Knowles's second motion to remand and for

leave to conduct limited jurisdictional discovery (Doc. 26), Plaintiff's supplement to the motion

(Doc. 28), Defendant The Standard Fire Insurance Company's response in opposition (Doc. 31),

Plaintiff's reply (Doc. 33), Defendant's sur-reply (Doc. 35), and Plaintiff's notice of supplemental

authority (Doc. 36).  For the reasons described herein, Plaintiff's second motion to remand and for

leave to conduct jurisdictional discovery (Doc. 26) is DENIED.

I.      **Factual Background and Procedural History**

On April 13, 2011, Plaintiff filed a putative class action complaint in the Circuit Court of

Miller County, Arkansas, alleging breach of contract due to Defendant's underpayment of claims for

loss or damage to real property.  Plaintiff's home was damaged by hail on or about March 10, 2010,

and thereafter, Plaintiff made a claim against his homeowners insurance policy, which was issued

by Defendant.  Plaintiff contends that Defendant failed to pay for charges reasonably associated with

retaining the services of a general contractor.  These charges, known as general contractors' overhead

and profit ("GCOP"), comprise an extra 20% fee routinely assessed by contractors when repairing

-1-

damaged property.  According to Plaintiff, Defendant fraudulently concealed its obligation to pay GCOP charges and forced Plaintiff and a purported class of persons similarly situated to bear this cost and suffer the ensuing injury.  According to the complaint, the class includes "hundreds, and possibly thousands, of individuals geographically dispersed across Arkansas . . . ."

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, allows a defendant to remove a putative class action case to federal court if there is minimal diversity of citizenship between the parties and if the aggregate amount in controversy exceeds $5 million.  Even though Plaintiff included a sworn stipulation attached as an exhibit to his complaint that purported to limit the aggregate class damages to less than $5 million, Defendant removed the case to federal court on May 18, 2011, arguing that federal jurisdiction pursuant to CAFA was proper. First, Defendant maintained that Plaintiff's stipulation should not be relied upon by the Court because Plaintiff had no legal right or authority to bind absent class members by limiting their potential recovery to $5 million.  Second, Defendant argued that if Plaintiff's stipulation were disregarded, the actual amount in controversy would exceed $5 million and place the case firmly within federal jurisdictional limits.

Shortly after removal, on June 6, 2011, Plaintiff filed his first motion to remand, asserting that, as master of his complaint, he had the right to limit his claims in the manner he chose in order to bring the lawsuit in state court, rather than federal court.  In support of his argument, Plaintiff cited to the case of *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009), in which the Eighth Circuit recommended that a plaintiff seeking to effectively limit class action damages to under $5 million could include "a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum upon remand."  Following the ruling in *Bell*, a number of class action complaints surfaced in this circuit, each accompanied by a stipulation made by the

plaintiff purporting to limit class damages to below CAFA's $5 million threshold. Faced with these stipulations and the Eighth Circuit's opinion in *Bell*, multiple federal district courts, including this Court, began remanding cases back to state court on the strength of these stipulations alone.

At the time the Court considered Plaintiff's first motion to remand, the state of the law was as described above. Plaintiff's complaint was accompanied by his stipulation that class damages, inclusive of attorney's fees and costs, would be capped at $5 million. The stipulation appeared to be valid and binding in light of *Bell* and its progeny. Therefore, the Court found on December 2, 2011, that although Defendant satisfied its initial burden of proving by a preponderance of the evidence that the actual amount in controversy was $5,024,150,[1] remand to state court was appropriate because Plaintiff's stipulation had demonstrated to a legal certainty that the aggregate amount of damages would not exceed $5 million.

Defendant petitioned the Eighth Circuit for permission to file an interlocutory appeal of the Court's decision to remand. The Eighth Circuit denied permission to appeal on January 4, 2012. Defendant then petitioned for rehearing en banc, which was denied. Thereafter, Defendant petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court granted Defendant's petition on August 31, 2012, and heard oral argument on January 7, 2013. On March 19, 2013, the Supreme Court held that Plaintiff's stipulation could not overcome this Court's finding that the CAFA jurisdictional threshold had been met. In a unanimous decision, the Supreme Court determined that "a plaintiff who files a proposed class action cannot legally bind members of the

---

[1] This figure was derived by adding the following: 20% of GCOP on structural loss payments and deductibles for a two-year class period ($3,054,961), a 12% statutory penalty for breach of contract pursuant to Ark. Code Ann. § 23-79-208(a)(1) ($366,595), and attorney's fees of 40% of the total damages award (comprised of GCOP payments, the 12% penalty, and prejudgment interest) ($1,602,594). This calculation did not assume an award of punitive damages.

proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345,

1349 (2013).  The Supreme Court concluded its opinion as follows:

> In sum, the stipulation at issue here can tie Knowles' hands, but it does not resolve
> the amount-in-controversy question in light of his inability to bind the rest of the
> class.  For this reason, we believe the District Court, when following the statute to
> aggregate the proposed class members' claims, should have ignored the stipulation.
> Because it did not, we vacate the judgment below and remand the case for further
> proceedings consistent with this opinion.

*Id.* at 1350.

Following the Supreme Court's directive to "vacate the judgment below," the Eighth Circuit

on May 24, 2013, remanded the case to this Court "with directions to retain jurisdiction and proceed

accordingly."  (Doc. 29-1).

Even before the Eighth Circuit's mandate issued, however, Plaintiff filed a second motion

to remand on March 28, 2013, asking this Court to undertake a "fresh review of Standard Fire's

evidence supporting its argument that the Court has CAFA jurisdiction, because the Court's prior

order of remand was rendered under a different legal framework—in the context of settled Eighth

Circuit law clearly permitting Plaintiff to rely on a stipulation rather than to make an evidentiary

showing of his own."  (Doc. 26, p. 2).

In Plaintiff's first motion to remand, Plaintiff had relied on the enforceability of his own

stipulation in arguing that the aggregate amount of damages in controversy would not exceed $5

million.  At the time, Plaintiff's only substantive attack on Defendant's proposed calculation of the

amount in controversy was that it was not properly supported by hard data or affidavits.  (Doc. 7, pp.

16-17).  Defendant subsequently produced an affidavit signed by Brian N. Harton, Director of

Product Management and Business Analysis Lead for the Property Claim Department of Standard

Fire, which attested to Defendant's method of calculating the projected amount in controversy. *See* Doc. 13, pp. 5-6. Relying on the Harton affidavit, the Court determined that Defendant fulfilled its burden of establishing by a preponderance of the evidence that the amount in controversy exceeded $5 million. *Knowles v. Standard Fire Ins. Co.*, 2011 WL 6013024, *3 (W.D. Ark. Dec. 2, 2011). It was only due to Plaintiff's stipulation that the Court determined it lacked jurisdiction to proceed in the case and granted Plaintiff's first motion to remand. *Id.* at *4.

Plaintiff now contends in his second motion to remand that the amount in controversy previously accepted by the Court of $5,024,150 should be re-examined due to alleged errors of law and fact contained within the calculation. First, Plaintiff argues that the amount in controversy should not have included an estimated award of attorney's fees. In the alternative, if attorney's fees were properly included in the amount in controversy, Plaintiff maintains that using a 40% rate to estimate the fees, rather than a 20-25% rate, was unreasonable. Second, Plaintiff disputes that prejudgment interest was properly included in the base amount used to estimate the award of attorney's fees. Third, Plaintiff argues that Defendant's amount-in-controversy calculation impermissibly includes prejudgment interest on the 12% statutory penalty for breach of contract. Fourth, Plaintiff suggests that payments of GCOP that were already made to potential class plaintiffs were improperly included in Defendant's calculation of damages. For all of these reasons, Plaintiff believes that the amount in controversy is actually less than $5 million, and therefore this Court lacks federal jurisdiction over the subject matter of this lawsuit.

## II.    Legal Standard

"CAFA provides the federal courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds

the sum or value of $5,000,000." *Standard Fire*, 133 S.Ct. at 1348 (quotations omitted).  The claims of the potential class members must be aggregated to determine whether the jurisdictional minimum has been met.  28 U.S.C. § 1332(d)(6).

To defeat remand, a defendant has the burden of showing by a preponderance of the evidence that the amount in controversy exceeds the federal court's minimum threshold for jurisdiction.  *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003).  To meet this standard, a defendant "need not prove that the damages 'are greater than the requisite amount,' only that a fact-finder 'might legally conclude that they are.'" *Hurst v. Nissan N.A., Inc.*, 511 Fed. Appx. 584, 585 (8th Cir. 2013) (quoting *Bell*, 557 F.3d at 959).  Once the preponderance standard is met, the plaintiff may only avoid litigating in federal court by showing "that it is legally impossible to recover in excess of the jurisdictional minimum."  *Bell*, 557 F.3d at 959.

## III.   Discussion

### A.      Appellate Treatment of Amount in Controversy

The Supreme Court observed in its opinion vacating the remand order in this case that this Court "should have ignored" Plaintiff's stipulation regarding the amount in controversy because Plaintiff lacked the authority to legally bind absent class members prior to class certification. *Standard Fire*, 133 S.Ct. at 1350.  The Supreme Court ultimately "vacate[d] the judgment below and remand[ed] the case for further proceedings . . . ."  *Id.*  Clearly, the "judgment below" was this Court's judgment, as "the Eighth Circuit declined to hear the appeal." *Id.* at 1348.

The amount-in-controversy calculation was not substantively discussed by the Supreme Court in its opinion; instead, the Supreme Court adopted this Court's finding that the amount in controversy "would, in the absence of the stipulation, have fallen just above the $5 million

-6-

threshold." *Id.* The Eighth Circuit also relied on this finding when issuing its mandate to "retain jurisdiction and proceed accordingly." (Doc. 29-1).

Contrary to Defendant's arguments, the Eighth Circuit's mandate to "retain jurisdiction and proceed accordingly" does not require the Court to do so blindly. As a court of limited jurisdiction, a federal court has an affirmative duty to ensure that any claims before it are within its subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 ("The plain language of § 1447(c) specifically contemplates and permits such a reevaluation.").

Defendant incorrectly argues that the "law-of-the-case doctrine" prohibits the Court from re-examining the issue of subject matter jurisdiction. This doctrine is "a means to prevent the relitigation of a settled issue in a case." *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008). It "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995). The doctrine does not, however, foreclose a federal court from reconsidering its findings supporting subject matter jurisdiction, particularly when those findings were not analyzed on appeal. *See Baca v. King*, 92 F.3d 1031, 1035 (10th Cir. 1996) ("[The law of the case doctrine] is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case."); *DiLaura v. Power Authority of State of New York*, 982 F.2d 73, 77 (2d Cir. 1992) (finding subject matter jurisdiction to be an issue "particularly suited to reconsideration"); *U.S. v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case,

can never be forfeited or waived.").

In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 n.5 (1988), the Supreme Court noted that "[p]erpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice." In the case at bar, however, the narrow issue of whether the amount in controversy in this case adds up to over $5 million has not been "perpetually litigated." Rather, the amount in controversy was accepted by this Court prior to appeal, without meaningful objection by Plaintiff, and then adopted on appeal by the Supreme Court without comment or analysis. Under these circumstances, the law-of-the-case doctrine "does not deprive the district court of the ability to reconsider earlier rulings." *Conrad v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) ("Where the district court believes that an earlier decision was reached in error, it may revisit the decision to avoid later reversal.") (internal quotation omitted).

The amount in controversy originally assumed by the Court and adopted by the appellate courts of $5,024,150 was the most conservative estimate proposed by either party at the time the finding was made. The calculation assumed a two-year period of claims even though Defendant believed a five-year period was legally permissible, and the calculation did not include an award of punitive damages even though Defendant argued convincingly that an award of punitive damages was legally possible in this case. Since the parties disagreed as to both of these issues, and the federal jurisdictional minimum could be met without deciding them, the Court made a finding that the amount in controversy had been satisfied by including in the calculation only the two-year claims period for damages, the 12% statutory penalty, and attorney's fees.

Now that the Court has been called upon to reexamine the amount in controversy, the Court will also consider Defendant's contention that punitive damages are legally recoverable. As for

Defendant's argument that Plaintiff lacks the authority to limit the claims period to two years, the Court will reserve judgment on this issue until class certification.

### B.  Amount in Controversy

#### 1.    Attorney's Fees at 40% of the Total Damages

Plaintiff's first attack on the amount-in-controversy calculation is that the Court erred in including an estimate of attorney's fees.  Plaintiff contends that if attorney's fees are to be included in the amount in controversy at all, it would be unreasonable to assume fees equivalent to 40% of the total damages.  According to Plaintiff, the "benchmark" for fees in class actions such as this one is typically 25% of the total, not 40%.  Plaintiff cites to several appellate court cases in which attorney's fees were awarded using a 20-25% multiplier.

As a preliminary matter, including an estimate of attorney's fees in the amount in controversy is appropriate where, as here, such fees are recoverable pursuant to state statute.  *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) ("Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction."); *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (excluding attorney's fees from the amount in controversy because plaintiff "ha[d] not established a statutory entitlement to attorney fees if he prevailed in this action"); *Skoda v. Lilly USA LLC*, 488 Fed. Appx. 161, 164 (8th Cir. 2012) (per curiam) (unpublished) (remanding case to district court to consider whether amount in controversy could be satisfied by adding reasonable attorney's fees available by state statute).  Arkansas law provides for the recovery of attorney's fees when an insurance company fails to pay amounts owed pursuant to a policy of insurance.  *See* Ark. Code Ann. § 23-79-208(a)(1) ("In all cases in which the loss occurs . . . the [company] shall be liable to pay the holder of the policy or his or her assigns, in addition to

the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.").  Therefore, it is the Court's view that the amount in controversy in this case may include a reasonable amount of attorney's fees.

As for Plaintiff's argument that Defendant's estimate of attorney's fees is too speculative, Defendant is not obligated to provide proof "to a legal certainty" that its estimate of the amount in controversy—or a component of the amount in controversy—is correct.  It must only show that a fact finder "might legally conclude" that the fees it proposes are possible.  *Bell*, 557 F.3d at 958 ("Demanding that a removing CAFA defendant establish the amount in controversy by a legal certainty inverts the 'legal certainty' test of *St. Paul Mercury*, by placing such burden on the party seeking to assert rather than defeat federal jurisdiction [and] plac[ing] too high a barrier in the path of defendants . . . .") (internal quotation and citation omitted).  It is *Plaintiff's* burden to show that Defendant's estimate of fees is  "legally impossible."  *Id.* at 959.

The Eighth Circuit has made clear that "[e]ven if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard."  *Raskas v. Johnson & Johnson*, 2013 WL 3198177, *3 (8th Cir. June 26, 2013).  "[A] good-faith estimate of the stakes" is all that is required.  *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).  "While courts should be guided by recognized factors in determining the reasonableness of an attorney's fee, there is no fixed formula to be used . . . ."  *State Farm Mut. Auto. Ins. Co. v. Brown*, 48 Ark. App. 136, 145 (Ark. Ct. App. 1995).

Under Arkansas law, an award of fees is determined by taking into account the factors

-10-

described in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229 (1990), including the experience and ability of the attorney; the time and labor required to perform the legal service properly; the amount involved in the case and the results obtained; the novelty and difficulty of the issues involved; the fee customarily charged in the locality for similar legal services; whether the fee is fixed or contingent; the time limitations imposed upon the client or by the circumstances; and the likelihood, if apparent to the client, that accepting the case precluded the attorney from accepting other employment.   For purposes of calculating a reasonable estimate of fees to be awarded at the conclusion of a case, a fact-intensive, prospective analysis of the *Chrisco* factors is neither necessary nor appropriate early in the litigation.   *Raskas*, 2013 WL 3198177 at *3 ("Defendants are not required to provide a formula or methodology for calculating the potential damages . . . The removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof.") (internal quotations and citations omitted).

The Court finds that it is reasonable to use a 40% multiplier to estimate attorney's fees for the amount in controversy in this case.   The Arkansas Court of Appeals affirmed a 40% fee award in a case involving an insurer's wrongful refusal to pay policy proceeds.   *See Capital Life & Accident Ins. Co. v. Phelps*, 76 Ark. App. 428, 434-35 (Ark. Ct. App. 2002).   Furthermore, even though other courts have found it reasonable to award attorney's fees at a rate of 20-25% of the total recovery, this does not mean that a 40% rate would be legally impossible.

Defendant's estimate of $1,602,594 in attorney's fees is also reasonable because it is supported by competent evidence.   Substantially higher attorneys fees than are estimated here were already awarded in seven class action lawsuits filed in the Circuit Court of Miller County, Arkansas, involving claims for GCOP payments by insureds against their insurance companies.   Defendant

-11-

provided the Court with copies of court-approved settlement documents from these lawsuits. *See* Docs. 9-1 to 9-7.   It is evident from the Court's review of these documents that the state court considered the *Chrisco* factors and approved attorney's fees in each of these cases that far exceeded $5 million (*see, e.g.*, Doc. 9-3, approving attorney's fees of $40 million for settlement of a GCOP case involving a class of insureds who claimed coverage for damage to buildings or other structures located in the State of Arkansas).   Furthermore, Plaintiff's attorneys were listed as class counsel in all seven of these state-court actions.   It therefore strikes the Court as disingenuous for Plaintiff to persist in his argument that the amount in controversy in the case at bar could not possibly exceed $5 million total.   The Court's previously-approved estimate of attorney's fees, which was based on a 40% multiplier, is therefore not impermissibly speculative.

## 2.     Prejudgment Interest Included in Attorney's Fees

Plaintiff's next argument is that the estimate of attorney's fees relied upon by the Court in arriving at the amount in controversy was based on a damages award that included prejudgment interest.   According to the CAFA statute, the amount in controversy must be determined "exclusive of interest and costs."   28 U.S.C. § 1332(d)(2).   Prejudgment interest must therefore be excluded from the base calculation of contract damages.   The purpose of such exclusion is to discourage plaintiffs from intentionally delaying filing suit in order to amass enough prejudgment interest to reach the federal jurisdictional minimum. *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (citing *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968).

Although attorney's fees are recoverable pursuant to Ark. Code Ann. § 23-79-208(a)(1) and are to be factored in when arriving at the total amount in controversy, it is unclear to the Court whether such fees may be calculated by taking a percentage of the total damages award that includes

prejudgment interest and/or a 12% statutory penalty.  No authority on this particular point is available.  However, the Court observes that if the purpose behind excluding prejudgment interest from the amount in controversy is to prevent a plaintiff from profiting from his intentional delay in filing suit, it appears that prejudgment interest should be excluded from the amount-in-controversy calculation altogether, including as a factor in the proposed estimate of attorney's fees.

As for the 12% statutory penalty that is also described in Ark. Code Ann. § 23-79-208(a)(1), the Eighth Circuit has explained that this penalty does not actually come due until awarded by the Court.  *Brown*, 48 Ark. App. at 146.  This is why a plaintiff cannot legally recover prejudgment interest on the penalty.  *Id.*  Although the penalty is a separate element of damages that is properly included in the amount in controversy, it remains an open question whether the penalty may be factored in when estimating attorney's fees.  Because the Court is uncertain how the Eighth Circuit would treat the inclusion of both prejudgment interest and the 12% penalty in the base award used to calculate attorney's fees, the Court will assume for the sake of argument that both amounts should be excluded from the fee calculation in the amount in controversy.  Excluding these amounts would reduce the estimated attorney's fees in this case from $1,602,594 to $1,221,984.

It is important to keep in mind, however, that this new estimate of attorney's fees is just that: an estimate.  As described previously, for purposes of determining the amount in controversy, it is reasonable to assume that an accurate estimate of attorney's fees in this case would be closer to the multi-million-dollar awards made in similar class actions filed in Miller County, particularly considering the complexity of the issues at stake here and the expertise of Plaintiff's counsel.

### 3.    Prejudgment Interest on 12% Statutory Penalty

As explained above, prejudgment interest on the 12% statutory penalty is not legally

recoverable. *Id.* Plaintiff requests jurisdictional discovery on this point to confirm his suspicion that Defendant included prejudgment interest on the penalty when previously estimating the total amount in controversy. It appears, however, that Plaintiff's concern is unjustified, as Defendant provided the Court with a detailed calculation of its proposed amount in controversy, and this estimate does not include an anticipated award of prejudgment interest on the 12% penalty. (Doc. 31-11). The Court is satisfied that Defendant's penalty calculation was correct.

### 4.    GCOP Paid to Certain Members of the Proposed Class

Plaintiff's last argument is that Defendant overestimated the potential contract damages award attributable to GCOP payments. Defendant's original estimate of contract damages for the class was derived by adding the total number of structural loss and deductible payments made to Arkansas insureds from January 1, 2009 to December 31, 2010, and then taking 20% of that total amount to represent unpaid GCOP. Plaintiff maintains that taking 20% of the total payments overstates the damages, as "substantial amounts of GCOP . . . have already been paid to class members." (Doc. 33, p. 32). In fact, Plaintiff maintains that "at least $433,608 must be subtracted from the amount in controversy" because this money was already paid to class members as GCOP. *Id.*

At this early stage in the litigation and for the purpose of evaluating the amount in controversy, a fact-intensive, individualized assessment of potential damages is not warranted. Instead, it is proper to calculate the potential damages as Defendant did, by determining the maximum potential value of the claims as alleged in the complaint. In *Raskas v. Johnson & Johnson*, 2013 WL 3198177 at *1, the Eighth Circuit held that the amount in controversy in a class action could be estimated using total sales data, even if that data was potentially overinclusive in

nature.  The plaintiffs in *Raskas* alleged that various defendant pharmaceuticals manufacturers had conspired with unknown third parties to deceive consumers into throwing away perfectly safe and effective bottles of Advil, Bayer, and Tylenol.  *Id.*  Plaintiffs sued the defendants on behalf of a purported class, alleging that the expiration dates printed on the labels of these drugs were meaningless and did not correlate to the drugs' safety or efficacy.  *Id.*  When the defendants attempted to establish the amount in controversy for the case, they presented the court with data on total sales of the subject medications during the relevant class period.  "Plaintiffs countered that these sales figures were insufficient to satisfy the amount in controversy requirement, as [p]laintiffs [were] only seeking to recover damages for medications discarded and replaced," not total medications sold.  *Id.*

In reversing the district court and finding that the amount in controversy had been conclusively established, the *Raskas* court determined that using total sales figures to calculate the amount in controversy was acceptable, even when such figures were overinclusive.  *Id.* at *2.  The court cited with approval the Seventh Circuit case of *Spivey v. Vertue, Inc.*, 528 F.3d 982, 983 (7th Cir. 2008), in which plaintiffs claimed they were subjected to some unlawful credit card charges, but the amount in controversy was properly derived by considering all credit card charges for the relevant time period.  The *Spivey* court found that the plaintiffs' claim "put into controversy the propriety of all of the charges."  *Raskas*, 2013 WL 3198177 at *2 (citing *Spivey*, 528 F.3d at 985). Similarly, the Ninth Circuit case of *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400-02 (9th Cir. 2010), announced that "evidence of total charges for landline telephone services was sufficient to meet the amount in controversy requirement in a class-action suit alleging the defendant unlawfully charged some customers for landline telephone service without their consent."  *Raskas*,

2013 WL 3198177 at *2 (citing *Lewis*, 627 F.3d at 400-02).

In applying the holding in *Raskas* to the case at bar, the Court finds that Defendant appropriately estimated unpaid GCOP by calculating 20% of the total payments Defendant made to prospective class members for structural losses and deductibles, even if that estimate was ultimately overinclusive. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis*, 627 F.3d at 400.

Examining Plaintiff's complaint, the Court notes that the "Prayer for Relief" section requests an award of money damages "in an amount equal to the amount that should have been paid to Class members for GCOP (20% of the amount paid by Defendant to complete repairs to the damaged property)." (Doc. 2, p. 13). The plain language of the complaint therefore contemplates calculating damages for the class exactly as Defendant has done: by assuming that 20% of the total amount paid by Defendant is owed to the members of the purported class. Accordingly, the Court finds that the calculation of damages for unpaid GCOP included in Defendant's proposed amount in controversy was proper.

### 5.    Punitive Damages

Punitive damages were not previously considered by the Court prior to appeal. At that time, the Court had found that Defendant established by a preponderance of the evidence that more than $5 million was in controversy without consideration of an award of punitive damages.

Also prior to appeal, the Court had credited Plaintiff's stipulation purporting to limit potential damages. In the complaint, Plaintiff stated that he "specifically disclaims any actual or potential entitlement to punitive damages and stipulates that he will not seek punitive damages in this action." (Doc. 2, p. 5). However, on appeal, the Supreme Court ruled that a stipulation of this

nature, made in an attempt to bind the class and restrict its potential recovery, must be ignored by the trial court.  *Standard Fire*, 133 S.Ct. at 1350.

In examining the issue of punitive damages, helpful guidance is provided by the Seventh Circuit's ruling in *Back Doctors Ltd. v. Metropolitan Property and Casualty Insurance Co.*, 637 F.3d at 827.  In *Back Doctors*, the court affirmed a finding that the amount in controversy exceeded $5 million under CAFA, primarily due to the trial court's consideration of a potential punitive damages award.  *Id.* at 829.  Punitive damages were assumed to be legally recoverable even though the plaintiff's complaint did not expressly include a prayer for punitive damages or allege that the defendant acted wantonly or maliciously.  *Id.*  The *Back Doctors* court reasoned that a punitive damages award was not impossible under Illinois law simply because a plaintiff had neglected to plead it in his complaint, noting that "juries can award damages not requested by the complaint." *Id.* at 831.  The court also quoted from Federal Rule of Civil Procedure 54(c), which provides that "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Considering the inclusive nature of Rule 54(c), the Seventh Circuit ultimately held that punitive damages were properly included in the amount in controversy for jurisdictional purposes.  *Back Doctors*, 637 F.3d at 831.

Turning to the question of whether an award of punitive damages is legally possible in the instant case under Arkansas law, it appears that Arkansas Rule of Civil Procedure 54(c) mirrors Federal Rule of Civil Procedure 54(c) in allowing Arkansas courts to grant all relief to which a party is entitled, even if such relief is not expressly demanded in a complaint.  Further, a number of courts interpreting Arkansas law have held that punitive damages may be awarded even when such damages are not explicitly requested in the complaint.  *See, e.g., Bowles v. Osmose Util. Servs., Inc.*, 443 F.3d

671, 675 (8th Cir. 2006) (affirming punitive damages award even though no prayer for punitive damages appeared in original or amended complaints); *Thatcher v. Hanover Ins. Group, Inc.*, 2012 WL 1933079, \*6 (W.D. Ark. May 29, 2012) (including punitive damages award in amount in controversy for purposes of CAFA jurisdiction even though not specifically pleaded in complaint); *Olson v. Riddle*, 280 Ark. 535, 536 (1983) (where plaintiff's complaint asserted claim for damages due to defendant's deliberate acts, plaintiff was permitted to amend complaint days before trial to explicitly seek punitive damages).

Plaintiff argues that "[t]he only injuries or damages alleged in the complaint are the underpayment of GCOP policy benefits, which are contract damages." (Doc. 33, p. 20).  Under Arkansas law, punitive damages for breach of contract are not allowed.  *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 8 (1984).  However, Plaintiff's complaint may also be construed as stating a claim for either bad faith in the insurance context or common law fraud.  The complaint states that "Defendant actively concealed information about entitlement to GCOP and represented that the amount paid was all that was owed," and that "Defendant's acts . . . were executed in a manner that was designed to conceal entitlement to GCOP." (Doc. 2, p. 11).  These allegations create at least the possibility that punitive damages could be awarded in tort.  *See Columbia Nat'l Ins. Co. v. Freeman*, 64 S.W.3d 720, 723 (Ark. 2002) (punitive damages for bad faith potentially available when insurer "affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured"); *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010) (punitive damages for fraud possible if defendant knew or ought to have known that his conduct would result in injury or damage, justifying an inference of malice).

Defendant has established by a preponderance of the evidence that a punitive damages award

-18-

is legally possible in this case and should be included when calculating the amount in controversy. Plaintiff has failed to meet his burden of proving to a legal certainty that an award of punitive damages could not occur. A potential punitive-to-compensatory damages ratio of 1:1 is "well within the acceptable range" and would in this case cause the amount in controversy to easily exceed $5,000,000. *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 791 (8th Cir. 2009). Accordingly, the Court will assume a punitive damages award of $3,054,961. The sum of the potential awards of punitive and compensatory damages is $6,109,922.

**III.    Conclusion**

The Court concludes that the amount in controversy exceeds $5 million and meets the federal jurisdictional requirements under CAFA. In light of the Court's findings above, further jurisdictional discovery as to the amount in controversy is unnecessary. The Court will therefore retain jurisdiction of this case, and an initial scheduling order will issue. Plaintiff's second motion to remand and for leave to conduct limited jurisdictional discovery (Doc. 26) is **DENIED**.

**IT IS SO ORDERED** this 2nd day of August, 2013.

*/s/ P. K. Holmes, III*

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

-19-